UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**, Plaintiff, v. **GREGORY FRANCIS AUSTIN**, Defendant. | 2:12-CR-20554-TGB-LJM-1 **ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE (ECF NO. 66)** |

Defendant Gregory Austin is an inmate incarcerated at the Forrest City Low Federal Correctional Institution in Forrest City, Arkansas. On April 29, 2020, Austin filed a pro se motion for compassionate release before the late Judge Arthur J. Tarnow. ECF No. 66. Austin claims that an underlying congenital medical condition, Hirschsprung's disease, places him at high risk of severe COVID-19 and requires surgical follow-up care that he has been denied.

Now through his court-appointed counsel, Austin maintains that the federal Bureau of Prisons has delayed necessary follow-up care to remove internal sutures placed during a February 2020 surgery to treat his Hirschsprung's disease. The Court has thoroughly evaluated the substantial briefing filed in this matter, with particular focus on the parties' most recent supplemental briefing and Austin's updated medical

1

records submitted in early February 2023. For the reasons that follow, Austin's motion for compassionate release is **DENIED**.

## I. BACKGROUND

On February 13, 2013, Austin pled guilty to three counts of production of child pornography involving three minors he solicited by using an online female persona. Government's Response in Opposition to Motion for Compassionate Release, ECF No. 74, PageID.730. On August 14, 2013, Judge Tarnow ordered Austin to serve a 15-year concurrent sentence. Judgment, ECF No. 37, PageID.204. Austin is currently incarcerated at the Forrest City Low Federal Correctional Institution ("FCL") in Forrest City, Arkansas. According to the federal Bureau of Prisons ("BOP") Inmate Locator database, Austin's projected release date is September 18, 2025.

On April 29, 2020, Austin filed a pro se motion for compassionate release claiming that an underlying medical condition, Hirschsprung's disease[1], places him at high risk of severe COVID-19 and requires surgical follow-up care that has been inaccessible during the pandemic.

---

[1] Hirschsprung's disease is a congenital condition that causes blockages in the colon. *Hirschsprung's Disease*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/hirschsprungs-disease/symptoms-causes/syc-20351556 (last visited Feb. 23, 2023). In Austin's case, the condition was detected soon after he was born, and he has required ongoing surgical treatment throughout his life. ECF No. 66, PageID.510.

Defendant's Motion for Compassionate Release, ECF No. 66, PageID.509. On May 27, 2020, Judge Tarnow appointed counsel to represent Austin in litigating his compassionate release motion.

As detailed in Austin's initial motion and first supplemental briefing, in late February 2020, Austin underwent surgery to treat his Hirschsprung's disease. *Id.* at PageID.511. The procedure involved removing "twelve inches of obstructed bowel . . . and an intensive round of lysis of organ adhesions." Defendant's Supplemental Briefing (June 4, 2020), ECF No. 70, PageID.522. Austin contends that BOP refused to take him to a post-operative follow-up appointment because of a COVID-19 outbreak at FCL, and has continued to delay his follow-up care. ECF No. 66, PageID.511; Defendant's Supplement Briefing (Feb. 3, 2023), ECF No. 97, PageID.1228–29; Joint Status Report, ECF No. 95, PageID.905–07.

In response to Austin's motion, the Government argues that there are no extraordinary and compelling circumstances warranting Austin's release. ECF No. 74, PageID.746–47. Furthermore, the Government contends that even if Austin is medically high risk, he is a danger to the public and should not be released. *Id.* at PageID.749.

On June 9, 2020, Judge Tarnow held an initial hearing on the compassionate release motion. Judge Tarnow asked Austin's counsel whether he should be considered medically high risk, but focused more closely on Austin's participation in mental health treatment programs

3

and his conduct while incarcerated. *See* Transcript of June 9, 2020 Hearing, ECF No. 78, PageID.816–17. Austin's counsel specifically noted that Austin had not yet enrolled in BOP's Sex Offender Treatment Program ("SOTP") because FCL does not provide such programming. *Id.* at PageID.817. Following this hearing, Judge Tarnow ordered the parties to obtain psychiatric evaluations for Austin and submit supplemental briefing on the evaluation results.

In September 2020, the parties complied with Judge Tarnow's order to submit psychiatric evaluation summaries. Government's Supplemental Exhibit on Defendant's Psychosexual Evaluation, ECF No. 81 (sealed); Defendant's Supplemental Exhibit on Defendant's Risk Assessment, ECF No. 83 (sealed). The Government's evaluation concluded that Austin should not be released because he is "at a high risk of re-offending on children" and a danger to the community. ECF No. 81, PageID.854. Furthermore, the Government's psychiatric evaluation recommended that Austin "receive Intensive Sex Offender Treatment while in custody," and be reevaluated for "his current risk level to re-offend" after "years of Intensive Sex Offender Treatment with continued success." *Id.*

Austin's psychiatric evaluation did not offer specific conclusions on whether he should be released or his dangerousness, but generally suggested that he was less likely to reoffend than the Government's evaluation. *See* ECF No. 83 (sealed), PageID.865–66 (concluding that

4

Austin is at "Average Risk" and in a "Moderate-Low Risk Category" for reoffending). Among other treatment plans, Austin's evaluation also recommended that he "*immediately* become an active participant in Sex Offender Treatment." *Id.* at PageID.870 (emphasis added).

Judge Tarnow held a follow-up hearing on November 5, 2020 to discuss the parties' psychiatric evaluations. Austin maintained that BOP had impeded his access to sex offender treatment, but that he would be able to receive immediate treatment if released. Meanwhile the Government argued that Austin had not volunteered to participate in the BOP's SOTP, despite being informed of treatment options when he arrived at FCL.

Following the November 5, 2020 hearing, Judge Tarnow ordered the parties to submit supplemental reports "detailing safe treatment options for Mr. Austin both inside and outside of prison." ECF No. 85, PageID.875. Austin emphasized that if released, he still "faces five years of intense supervision by the Court and intensive treatment for any residual psychological or addiction issues," under the Court's supervised release terms. Defendant's Supplemental Report Regarding Safe Treatment Options (Dec. 9, 2020), ECF No. 87, PageID.878. As such, Austin reiterated his intent to diligently comply with the Court's stringent supervised release conditions, including sex offender registration and mental health treatment. Furthermore, Austin noted that he could not identify a "residential sex offender treatment program

5

available in Michigan," meaning that the best options are out-patient programs. *Id.* at PageID.880.

Continuing to oppose Austin's release, the Government detailed the process of receiving treatment through BOP's SOTP, which includes residential and non-residential programs. But importantly, Austin can only enter the SOTP if he volunteers for treatment. Government's Supplemental Filing (Dec. 10, 2020), ECF No. 88, PageID.889. While the Government noted that "[t]here is no definitive timeframe" for when Austin could start treatment, it estimated that Austin "could enter a program in the next eight months." *Id.*

Austin's case was transferred to this Court in March 2022. On November 7, 2022, the Court held a status conference with the parties to inquire about Austin's health and whether he had enrolled in the SOTP. Austin's counsel explained that he had difficulty reaching Austin at FCL, and could not provide a meaningful update on his health or SOTP enrollment. The Court instructed the parties to work together to obtain updated health records from BOP and to ensure that Austin's counsel could reach him in a timely manner.

The Court held a follow-up status conference on January 4, 2023 to discuss the parties' progress on obtaining updates on Austin's health and SOTP enrollment. The parties represented that they had reviewed Austin's recent BOP health records, and provided brief arguments on whether Austin required surgical follow-up to remove the internal

sutures from the February 2020 procedure. But the parties still could not determine whether Austin had taken steps to enroll in the SOTP. After this conference, the Court ordered the parties to submit a joint status report with supporting documentation to provide definitive answers on BOP's treatment plan for Austin's Hirschsprung's disease and whether Austin had enrolled in the SOTP. ECF No. 92.

In accordance with the Court's Order, the parties submitted a joint status report and updated versions of Austin's BOP medical records. ECF Nos. 95, 96 (sealed). Austin also filed a supplemental brief further explaining his position that "BOP's mismanagement of his serious health conditions" constitutes an extraordinary and compelling reason justifying his release. ECF No. 97, PageID.1228. While the parties articulated competing narratives on BOP's treatment of Austin's Hirschsprung's disease, both agreed that Austin still had not volunteered to enroll in the SOTP. ECF No. 95, PageID.908–09. As explanation for his failure to volunteer for the SOTP, Austin claims that FCL staff represented to him that making such a request is "futile." *Id*. at PageID.909. Specifically, Austin explains that he was told that every year, "only one inmate is selected" from FCL to be transferred to an SOTP facility. *Id*.

On February 6, 2023, the Court held a status conference to permit the parties to address their submissions. Austin's counsel summarized Austin's position that BOP has continually delayed treatment for

7

removing the internal sutures from his February 2020 surgery, and highlighted more recent delays in addressing Austin's hernias and constipation. When asked for clarification on the grounds supporting Austin's compassionate release request, Austin's counsel confirmed that the primary concern underlying compassionate release is BOP's handling of Austin's internal sutures—not Austin's hernias or constipation. The Government emphasized that Austin's failure to volunteer for the SOTP should be of significant concern when considering his entitlement to compassionate release. As to Austin's health, the Government noted that BOP records reflect no medical need to remove the internal sutures and are similarly devoid of indications that Austin is in pain because of the sutures.

## II. LEGAL STANDARD

After the defendant has satisfied the administrative exhaustion requirement of the First Step Act, *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020), the Court may review the "three substantive requirements" for granting compassionate release. *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). First, the Court must find the existence of "extraordinary and compelling reasons" warranting the reduction. *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).

Second, the Court must find that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). But absent "an applicable policy statement for

8

inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, 984 F.3d 516, 519–20 (6th Cir. 2021).

Third, the Court must consider the sentencing factors in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). These factors account for the defendant's recidivism risk, danger to the public, seriousness of the offense, and how to provide the defendant with "medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)–(D).

### III. DISCUSSION

The Government "concedes" that Austin has satisfied the First Step Act's exhaustion requirement. ECF No. 74, PageID.742, PageID.743. Therefore, the Court must evaluate whether there are extraordinary and compelling circumstances warranting Austin's release and whether the pertinent sentencing factors under 18 U.S.C. § 3553(a) support compassionate release.

**A. Extraordinary and Compelling Circumstances**

At the outset, the Court notes that in June 2020, Austin's court-appointed counsel filed a supplemental brief in support of Austin's motion for compassionate release detailing emerging case law on compassionate release for at-risk inmates in the context of COVID-19. ECF No. 70. When this briefing was filed, the COVID-19 vaccine was not yet readily available. But much of the case law cited in Austin's June

9

2020 supplemental brief is now abrogated by the Sixth Circuit's holding that "when the defendant has access to the COVID-19 vaccine," there are no "extraordinary and compelling" reasons arising from COVID-19 exposure warranting sentence reduction. *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021).

Austin has been fully vaccinated against COVID-19 and received a booster shot as recently as October 2022. Defendant's Medical Records (sealed), ECF No. 96-2, PageID.985. Moreover, Austin's most recent joint status report submission and supplemental briefing filed on February 2, 2023 no longer rely on COVID-19 as a basis for compassionate release. Therefore, the Court focuses solely on Austin's entitlement to compassionate release based on BOP's alleged failure to manage his treatment for Hirschsprung's disease.

While this Court and others have held that BOP's egregious mismanagement of serious health conditions can qualify as an extraordinary and compelling reason to support compassionate release, a review of the record evidence shows that such circumstances are not present here.

First, Austin contends that BOP has delayed scheduling follow-up surgery to remove internal sutures from his February 2020 surgery and lacks a treatment plan for his Hirschsprung's disease. Indeed, Austin maintains that he "has no knowledge of" any follow-up related to his internal sutures "and counsel has not been presented with any records

10

that indicate otherwise." ECF No. 95, PageID.906. But in reviewing Austin's medical records, the Court notes that they support a finding that BOP has affirmatively determined that the internal sutures from Austin's February 2020 surgery do not require removal.

For example, a handwritten assessment dated April 14, 2021 summarizes findings from a "general surgery" consultation and recommends "observation" for Austin's conditions rather than immediate surgery. Specifically, the note recognizes Austin's "hernia" and the fact that he "had multiple abdominal surgeries," including the most recent surgery involving "excision of [his] small bowel." ECF No. 96-1 (sealed), PageID.958. In the "plan" section of the assessment, the note directs "observation" for Austin's conditions. *Id.* While parts of this handwritten note (including the signature) are illegible or use unfamiliar shorthand, a BOP Administrative Note from the same date—April 14, 2021—provides helpful insight. In that note, BOP confirms that on April 14, 2021, Dr. Iskander, a general surgeon, saw Austin for a consultation and concluded that "no surgery for abdominal hernia [was] merited at this time." *Id.* at PageID.914.

And in a more recent BOP Clinical Encounter record from August 24, 2022, a BOP provider indicated that Austin "[r]eports that he was supposed to have a follow up for a second surgery that he never had," specifically for "retained wires." ECF No. 96-2 (sealed), PageID.966, PageID.968. But this record similarly refers to an April 2021 consultation

11

where "no surgery was indicated at this time" and made "recommendations to observe." *Id.* at PageID.966–68. Therefore, although Austin may believe that he still requires a follow-up surgery, the treatment plan for Austin's Hirschsprung's disease described in the medical records simply involves observation as the appropriate course of treatment.

Second, Austin points out that he has experienced recent issues with "symptomatic" but "reducible" hernias and constipation. ECF No. 96-2 (sealed), PageID.968; ECF No. 96-3 (sealed), PageID.987, PageID.998. As to these medical conditions, Austin contends that he has received delayed or inadequate treatment. In addition to BOP's delay in taking him to a radiologist for diagnosis of the constipation, Austin emphasizes that he requires follow up for the hernias and has not received the results of BOP's review of the radiology imaging. ECF No. 95, PageID.907.

But Austin's counsel has clarified that the fundamental basis for Austin's compassionate release request is BOP's alleged failure to provide him with follow-up surgery for the internal sutures. And the Court does not purport to make a medical judgment about whether and to what extent Austin's health issues are interrelated. As discussed above, with respect to the internal sutures specifically, the medical records support the conclusion that the BOP doctors have determined that a treatment plan does not require surgery. While Austin's

12

allegations that BOP has delayed his receipt of necessary medical care and failed to timely communicate diagnostic results are concerning, they do not create the kind of extraordinary and compelling circumstances meriting compassionate release.

Third, the Court notes that the record does not reflect that Austin has raised any recent complaints about pain associated with the internal sutures from his February 2020 surgery. In October 2020, Austin complained that he could feel the internal "suture sticking me sometimes," but denied that it was causing him pain. ECF No. 96-4 (sealed), PageID.1001. Aside from this reference from three years ago, the Court did not identify any other complaints of pain or discomfort specifically related to the internal sutures.

Ultimately, Austin has not shown that extraordinary and compelling circumstances warrant his release. The record here does not sufficiently demonstrate that the treatment of Austin's medical conditions has been grossly mismanaged to create a serious risk to his continuing health and welfare.

### B. Application of the § 3553(a) Sentencing Factors

The Court must also consider whether the § 3553(a) factors weigh in favor or against Austin's release, even when he is alleging that extraordinary and compelling circumstances support his release. The first § 3553 factor, the nature and circumstances of Austin's offense, weighs against release because the facts of the offense are indisputably

13

severe and disturbing. Accordingly, this Court has focused heavily on determining whether Austin has taken steps to reduce his risk of recidivism and demonstrate his willingness to seek crucial psychological treatment.

In connection with these factors, the Court is concerned by the fact that Austin has continually failed to volunteer for the SOTP. This issue has been at the forefront of the Court's inquiry into Austin's motion since it was first raised. By failing even to try to obtain sex offender treatment while serving his sentence, Austin does not demonstrate a commitment to rehabilitation. Although Austin claims that he was told that requesting entry into the SOTP would be "futile," even if true, this would not absolve Austin of *his* responsibility to seek out and participate in such programming. Nor would it reduce his documented need for such treatment.

Austin cites a case in which a court granted compassionate release after BOP denied the defendant's request for entry into the SOTP. ECF No. 97, PageID.1229. But that case is clearly inapplicable here, as Austin has not even attempted to volunteer. In fact, under more similar circumstances, where the defendant "during his lengthy term of imprisonment, declined to take rehabilitative SOTP programs," courts in this district have denied compassionate release by noting "a lack of sincere rehabilitation" and ongoing concerns about public safety. *United States v. Pizzino*, No. 09-20002, 2020 WL 7695901, at *3 (E.D. Mich. Dec.

14

28, 2020) (Borman, J.); *see also United States v. Farnsworth*, No. 15-20095, 2021 WL 4962135, at *7 (E.D. Mich. Oct. 26, 2021), *reconsideration denied*, 2021 WL 5564773 (E.D. Mich. Nov. 29, 2021) (Goldsmith, J.) (denying compassionate release where the defendant demonstrated "unwillingness to participate in a program that is specifically designed to reduce the risk of recidivism by sexual offenders like him"); *United States v. Mann*, No. 15-20017, 2020 WL 6685209, at *4 (E.D. Mich. Nov. 12, 2020) (Roberts, J.) (denying compassionate release and highlighting "the dangerousness" of the defendant's failure to participate in the SOTP).

For the same reasons here, consideration of the § 3553(a) factors counsels strongly against granting Austin's compassionate release motion.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for compassionate release is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 23, 2023    s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE

15